*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0623**

State of Minnesota,
Respondent,

vs.

James Pierre Dortch,
Appellant.

**Filed April 4, 2016
Affirmed
Jesson, Judge**

Ramsey County District Court
File No. 62-CR-14-6452

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Tara Reese Duginske, Special Assistant Public Defender, Briggs and Morgan, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Jesson, Judge; and Peterson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JESSON**, Judge

Appellant challenges his conviction of possession of a firearm by an ineligible person, arguing that his right to a speedy trial was violated and that there was insufficient

evidence to support his conviction. Because appellant's defense was not prejudiced by the trial delays and the evidence supports the conviction, we affirm.

## FACTS

In August 2014, Saint Paul police responded to a report of a group of males, including one wearing a black t-shirt with red lettering, with a gun. When the officers conducted a felony stop of the men and ordered them to get on the ground, the man wearing the black t-shirt began to run away while holding the waistband of his pants. The other men in the group complied with the officers' commands. Officers pursued the running man, but lost sight of him for about 10 seconds when he ran behind some trees. The man was apprehended shortly thereafter and identified as appellant James Pierre Dortch. Officers searched the area where Dortch had briefly hidden, and discovered a .45 caliber handgun with an obliterated serial number. The handgun "was not dirty, was not dusty, and did not appear as if it had been abandoned there for an extended period of time." Based on the handgun's condition, the officers believed it had very recently been discarded. Dortch was arrested and charged with possession of a firearm by an ineligible person and possession of a firearm with an altered serial number.

Two days after his arrest, Dortch made a phone call from jail in which he stated that "they a-- ain't found nothing on me but, sh-t, they, they found that mother--cker and it's my DNA on there. . . . They didn't find it on me. They found it though. You feel me? And I was the only one that ran over there so they charged me with it." Subsequent testing did not match Dortch's DNA to a sample taken from the handgun.

2

On September 24, 2014, Dortch demanded a speedy trial and a jury trial was set for November 17, 2014. On November 17, at the state's request to allow more time for DNA analysis, the district court rescheduled the jury trial for November 24, 2014. On November 24, Dortch requested a continuance to allow him more time to review the DNA results, and the district court rescheduled the jury trial for December 1, 2014. On December 1, Dortch waived his right to a jury trial and a bench trial began. The bench trial continued on December 5 and 26, 2014. On January 7, 2015, the district court made findings of guilt on the record, and on January 14, 2015, the district court issued a written order consistent with the on-the-record findings. This appeal follows.

**D E C I S I O N**

**I.**

Both the United States and Minnesota constitutions guarantee a criminal defendant the right to a speedy trial. U.S. Const. amend. VI; Minn. Const. art. I, § 6. "A speedy-trial challenge presents a constitutional question subject to de novo review." *State v. Griffin*, 760 N.W.2d 336, 339 (Minn. App. 2009). We balance four factors to determine whether a defendant's right to a speedy trial was violated: "(1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his or her right to a speedy trial; and (4) whether the delay prejudiced the defendant." *State v. Windish*, 590 N.W.2d 311, 315 (Minn. 1999) (citing *Barker v. Wingo*, 407 U.S. 514, 530-31, 92 S. Ct. 2182, 2191-92)). All the factors must be considered along with other relevant circumstances. *Id.* A single factor does not create "a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial." *Id.* (quotation omitted).

*Length of Delay*

"The length of the delay is a 'triggering mechanism' which determines whether further review is necessary." *Id.* at 315 (quoting *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192). Upon a defendant's demand after the entry of a not-guilty plea, "the trial must start within 60 days . . . unless the court finds good cause for a later trial date." Minn. R. Crim. P. 11.09(b). Because Dortch's trial began more than 60 days after his speedy-trial demand, we must consider the other factors.

*Reason for delay*

The state and the court bear the burden to ensure a speedy trial. *Windish*, 590 N.W.2d at 316. Different weights are assigned to different reasons for delay. *State v. Sistrunk*, 429 N.W.2d 280, 282 (Minn. App. 1988), *review denied* (Minn. Nov. 23, 1988). Valid reasons, such as missing witnesses, justify an appropriate delay. *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192. Reasons such as negligence or overcrowded courts weigh less heavily against the government. *Id.* The state's deliberate attempt to delay trial weighs strongly against the state. *Id.* Conversely, "[w]hen the overall delay in bringing a case to trial is the result of the defendant's actions, there is no speedy trial violation." *State v. DeRosier*, 695 N.W.2d 97, 109 (Minn. 2005). When a defendant causes the delay, this "often is deemed a temporary waiver of his speedy trial demand, which can only be revived when the defendant reasserts his speedy trial right." *State v. Johnson*, 498 N.W.2d 10, 16 (Minn. 1993).

On Dortch's original trial date, November 17, 2014, the state requested, and was granted, a one week continuance.[1] Dortch's trial was rescheduled for Monday, November 24, 2014, the 60th day following his speedy demand. On November 24, Dortch requested a continuance because he had only received the DNA results the prior Friday. The state noted that they had also only received the DNA results the prior Friday, and that they promptly shared the results with the defense. The district court granted a one week continuance, and trial commenced on December 1, 2014.

Dortch asserts that *his* requested delay should be attributed to the state because the state did not provide the DNA evidence earlier. But there is no indication that the state was responsible for the amount of time it took for the DNA results to be released, or that the state deliberately delayed trial because of the DNA evidence. Moreover, the time needed for DNA testing can constitute good cause for a continuance. *State v. Stroud*, 459 N.W.2d 332, 335 (Minn. App. 1990). Thus, Dortch's requested delay did not violate his right to a speedy trial.

After the first morning of trial, the court continued the trial for four days because the state's other witnesses were unavailable. The record is unclear as to why, after the second day of trial, the matter was continued for thirteen days, and ultimately did not resume until December 26, 2014. Dortch contends that the state was responsible for the delays after trial commenced, but cites no authority supporting his assertion that delays after trial commences violate the right to a speedy trial. Further, at least one of the delays

[1] The state's first requested continuance kept Dortch's trial within the 60-day period; this delay is thus irrelevant to Dortch's speedy-trial demand.

5

after trial began was due to witness unavailability, a permissible reason for delay. *Windish*, 590 N.W.2d at 317. Dortch's trial was completed within a month of its commencement, and the limited in-trial delays do not require reversal.

*Assertion of right to speedy trial*

Dortch asserted his speedy-trial demand in writing and on the record and did not withdraw this request. This factor clearly weighs in favor of Dortch.

*Prejudice as a result of the delay*

The purposes of the right to a speedy trial are: "(1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) preventing the possibility that the defense will be impaired." *Id.* at 318. The third factor presents the most serious interest. *Id.* There is no indication that the trial delay prejudiced Dortch. To the contrary, Dortch's defense was strengthened by the delay that he asked for in order to review DNA evidence that favored him.

Dortch remained in custody during the delays and claims that the number of court appearances and continuances caused him great anxiety and concern. But Dortch had three outstanding warrants in two other counties. "If a defendant is already in custody for another offense, . . . the first two interests are not implicated." *State v. Taylor*, 869 N.W.2d 1, 20 (Minn. 2015). Although the record is unclear as to whether Dortch would have been held in another county had he been released, when considering the length of his likely incarceration in connection with the other charges, we cannot find prejudice in Dortch's pretrial incarceration. There is also no indication that Dortch suffered undue prejudicial stress and anxiety. *See State v. Friberg*, 435 N.W.2d 509, 515 (Minn. 1989)

6

("The only prejudice attested to at the hearing was the stress, anxiety and inconvenience experienced by anyone who is involved in a trial.").

After balancing these factors, we conclude that Dortch did not suffer prejudice that requires reversal.

## II.

Dortch asserts that there is insufficient evidence to sustain his conviction of possession of a firearm by an ineligible person. Our review of a sufficiency-of-the-evidence claim is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to sustain the verdict. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We will not disturb the verdict if the factfinder, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

Circumstantial and direct evidence are given the same weight.[2] *State v. Bauer*, 598 N.W.2d 352, 370 (Minn. 1999). But where at least one element of a charge is based on circumstantial evidence, we apply a two-step process to the analysis. *State v. Porte*, 832 N.W.2d 303, 309-310 (Minn. App. 2013). "The first step is to identify the circumstances proved." *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). In doing

---

[2] "Direct evidence is evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption. *Bernhardt*, 684 N.W.2d at 477 n.11 (quotation omitted). Circumstantial evidence is "evidence based on inference and not on personal knowledge or observation." *Id.* (quotation omitted).

so, we defer to the factfinder's acceptance of the state's evidence and rejection of conflicting evidence. *Id.* at 598-99. "The second step is to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* at 599 (quotations omitted). An alternative rational hypothesis must be supported by more than "mere conjecture" and must "point to evidence in the record that is consistent with a rational theory other than guilt." *State v. Tscheu*, 758 N.W.2d 849, 858 (Minn. 2008). We independently examine inferences that may be drawn from the circumstances proved by the evidence as a whole, refraining from examining each piece of evidence in isolation. *State v. Andersen*, 784 N.W.2d 320, 329-30, 332 (Minn. 2010). Because this case involves both direct and circumstantial evidence, we apply the two-step process.

The state proved by direct evidence that: Dortch was the only one who ran from the group of males stopped by the police after a 911 caller reported someone in the group had a gun; he was seen clutching the front of his pants while running; officers lost sight of him momentarily and subsequently found a handgun in the area where they lost sight of him; the handgun recovered was not dusty or dusty and appeared to have been very recently discarded; and Dortch stated in a phone call from jail that "They a-- ain't find nothing on me but, sh-t, they, they found that mother--cker and it's my DNA on there." The only inference we must make is that Dortch dropped the handgun in the area where officers lost sight of him.

Dortch argues that he ran, not because he possessed a firearm, but because he had outstanding warrants; that he could have been clutching his pants because they were

8

loose; that the firearm could have been placed in the weeds at any time since it was a remote area near a liquor store; and that the jail call was merely a statement about what would happen if his DNA was found on the gun. Given the entirety of the record—including the direct evidence of a report of a group of men with a gun, that Dortch was the only one who ran through the area where the gun was found, that the officers found the handgun in the area where they briefly lost sight of Dortch, and the specific statements Dortch made during a phone call placed after his arrest—these alternative explanations are mere conjecture that do not reasonably support a rational hypothesis other than that of guilt. The evidence forms a complete chain that supports the conviction.

**Affirmed.**